## 76832. ORKIN EXTERMINATING COMPANY, INC. v. DURDEN.
### (376 SE2d 376)

Benham, Judge.

In 1973, appellant Orkin Exterminating Company and appellee Durden entered into separate contracts whereby appellant agreed to treat appellee's home for termite and powder-post beetle infestation, and to re-treat should infestation recur while appellant and appellee maintained their contractual relationship. In 1986, appellee filed suit

against appellant, alleging negligent inspection, negligent treatment, fraud and deceit, bad faith, and reckless disregard for its actions. After a jury returned a verdict awarding appellee $15,768 for termite damage, $15,000 for powder-post beetle damage, $9,000 attorney fees, and $110,000 punitive damages, the trial court entered a judgment in favor of appellee for $149,768, from which judgment appellant brings this appeal.

1. Appellant first contends the trial court erred in denying appellant's motions for directed verdict and judgment n.o.v. with regard to the allegations of negligent treatment and inspection. " 'As with a directed verdict, a motion for judgment notwithstanding the verdict is proper only where "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." [Cits.]' In applying this standard, we must view the evidence in a light most favorable to the party securing the jury's verdict. [Cit.]" *Hiers-Wright Assoc. v. Manufacturers Hanover &c. Corp.*, 182 Ga. App. 732 (2) (356 SE2d 903) (1987). Mindful of the appropriate standard, we turn to the evidence presented at trial concerning the allegations of negligent treatment and inspection.

Following the initial inspection of appellee's home in 1973, appellant's agent made a representative drawing of appellee's home and marked the areas of visible existing termite and powder-post beetle damage, presently active infestation, and the treatment performed. The chart reflected that powder-post beetle damage was found throughout the understructure of the house, while termite damage was confined to the northern portion of the dwelling. According to the graph, appellant's agent treated the house by removing cellulose debris, trenching and treating the foundation, and drilling the structure's brick piers. Appellant's termite technician completed a checklist in March 1973 showing that trash and debris had been removed; that all work done appeared on the graph; and that all wood-ground contact had been insulated or removed. Unmarked on the checklist were the statements that foundations, walls, piers, and supports had been trenched or drilled and treated; that all piers and double brick chain walls had been drilled and treated; and that the work was in compliance with the applicable state minimum standards for termite control.

Annual reinspection receipts for 1978 and for 1981-1986 noted that there was no evidence of subterranean termites, and annual receipts from 1983-1985 reflected that the dwelling was reinspected for powder-post beetles and that retreatment was not necessary.

During the spring of 1985, the representative of a competitor of appellant visited appellee's home and found an active powder-post beetle problem in 25-30 percent of the underside of the home, and

active termites in the base of the door casing around the door on the southern end of the home. The competitor's agent opined that the powder-post beetle outbreak covering nearly one-third of the house should have been seen "in a normal inspection a year before . . . ," and that termites take anywhere from 6 to 18 months to reach the level of infestation he found in the spring months of 1985. Appellant's last annual termite inspection prior to the infestation discovery was October 1984, and the last powder-post beetle inspection was November 1984. The competitor's agent found no physical evidence that the home's brick piers had been drilled, "a normal procedure in a treatment in a home like that." In June 1985, after appellee complained to the state inspector for the pest control industry who noticed termite damage in the door casing on the southern side of the house, appellant's agents replaced the door casing at no charge to appellee. The grievance/claim report completed by appellant's agent labeled it a termite claim, referred to appellee's termite treatment guarantee, and noted that the "original treatment" was not performed properly in accordance with standard company treating procedures.

"A homeowner may recover for negligent inspection when the evidence shows damage was present and should have been discovered in the course of an inspection. [Cit.] . . . [D]iscovery of . . . damage without proof it had been present at the time of an earlier inspection [does] not give rise to an action for negligent inspection." *Tabor v. Orkin Exterminating Co.*, 183 Ga. App. 807, 809 (360 SE2d 34) (1987). Appellee presented evidence from which it could be deduced that powder-post beetles and termites were present when appellant's agent inspected appellee's home in 1984. Furthermore, evidence that the structure's brick piers should have been drilled but were not supports the verdict against appellant for negligent treatment.

Appellant can be held financially responsible only for that damage proximately caused by its negligence. As summarized above, appellee presented evidence from which the jury could conclude that appellant was negligent. The question now crucial to the viability of the jury verdict and the judgment entered thereon is whether appellee sufficiently proved damages.

An expert in construction testified that in November 1987, he exposed all exterior walls of the structure except the northern side (where damage had been documented in the 1973 report) and found extensive termite damage. He inspected the subflooring and found powder-post beetle damage. The expert estimated it would cost $13,140 to repair the termite damage and $15,750 to repair the powder-post beetle damage now apparent, excluding the northern portion of the house where appellant's 1973 graph depicted active infestation. He admitted on cross-examination that he did not know when the damage he observed had occurred; that he had no idea whether any of

the powder-post beetle damage he saw occurred between 1973 and the present; and that he could not estimate the costs of repairs needed in 1973. While appellee proved the total cost of repairs necessary to her home due to the damage done by termites and powder-post beetles, she did not isolate the cost of those damages that occurred due to appellant's negligence. In 1973, appellant documented that appellee's home had incurred powder-post beetle damage. Inasmuch as that damage preexisted appellant's negligence, it cannot have been proximately caused by appellant's negligence, and appellant cannot be held responsible therefor. Without evidence of the cost of the repair of the powder-post beetle damage existing in 1973, the jury had no basis for determining the cost to repair powder-post beetle damage that resulted from appellant's post-1973 negligence. See *Parsells v. Orkin Exterminating Co.*, 178 Ga. App. 51, 52 (342 SE2d 13) (1986).

In discussing the cost to repair the termite damage appellee's home had suffered, the construction expert stated repeatedly that his figures did not include the northern side of the house, the area depicted in appellant's 1973 chart as having suffered termite damage. However, the contractor's figures did include repair of the damage he found upon removal of the siding from the home's exterior walls. Appellant's original graph depicted visible damage only and appellant refused to guarantee that the graph represented the entire damage then existing, due to the limitation to visible damage. Appellee's witnesses were unable to testify to the age of the newly-exposed termite damage; as a result, appellee was unable to prove that the damage occurred as a result of appellant's negligent treatment and inspection. Since there was no evidence in the record from which the jury could determine whether the damage occurred before or after appellant's original inspection of appellee's home, and there was no evidence concerning the cost to repair only that damage that occurred after the 1973 inspection, the jury verdict was without its necessary foundation and must fall. See *Parsells v. Orkin Exterminating Co.*, supra. "[T]he amount of damages found by the jury must be authorized by the evidence." *Story v. Monteith*, 180 Ga. App. 517, 519 (349 SE2d 760) (1986). However, the jury was never presented with the evidence from which it could determine the amount of damage appellee's home suffered due to appellant's negligence. In the absence of such evidence, the trial court should have granted appellant's motions for directed verdict or for judgment n.o.v.

Reversal of the awards for powder-post beetle and termite damage renders improper as a matter of law the jury's award of attorney fees and punitive damages in favor of appellee. *Chrysler Corp. v. Marinari*, 177 Ga. App. 304 (1) (339 SE2d 343) (1985); *Wade v. Culpepper*, 158 Ga. App. 303, 305 (279 SE2d 748) (1981).

2. Appellant also sought and was denied a directed verdict on ap-

pellee's allegation of fraud. Appellant argues that there was no evidence that its agents knowingly made false representations to appellee. The jury was authorized to conclude that appellant's agents represented to appellee that the house had been treated when, in fact, it had not; and that appellant's agents represented to appellee upon reinspection that there was no live infestation and no new infestation for retreatment when, in fact, there was. We find no error in the trial court's denial of appellant's motion on the ground of lack of intent.

3. In its final enumeration of error, appellant maintains the trial court erred by instructing the jury it was authorized to award attorney fees to appellee. "The jury may allow expenses of litigation including attorney fees where the defendant has acted in bad faith in the transaction out of which the cause of action arose. [Cits.]" *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331 (8b) (319 SE2d 470) (1984). Appellant's documents disclosed its knowledge that appellee's home had not been treated according to industry standards. That was sufficient to support the trial court's decision to charge the jury on the issue. Id.

4. In light of our holding in Division 1, appellee's motion for imposition of damages for frivolous appeal is denied.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 4, 1988 —
REHEARINGS DENIED DECEMBER 5, 1988 —

*Kent & Barrow, Jordon D. Morrow, Richard P. Decker*, for appellant.
*Adam P. Cerbone, Thomas M. Cerbone*, for appellee.