## A99A0096. WESTMINSTER HOLDINGS, LTD. v. WEATHERSPOON.

### (517 SE2d 80)

POPE, Presiding Judge.

Westminster Holdings, Ltd. sued Jennette Weatherspoon for breach of contract and fraud in connection with the sale of Weatherspoon's property. The trial court granted Weatherspoon's summary judgment motion on both claims. Westminster appeals, and we affirm.

Westminster is a corporation engaged in the business of renovating real property for re-sale, and Weatherspoon is a licensed real estate agent. On or about February 4, 1997, Westminster entered into a Purchase and Sale Agreement (the "Agreement") to purchase residential property from Weatherspoon at a price of $38,000. The Agreement provided that the sale was contingent upon Westminster's inspection of the property. After the inspection, Westminster was to furnish Weatherspoon any proposed amendment to the Agreement, along with a copy of the inspection report. The Agreement's inspection provision also stated, "Notwithstanding anything contained herein to the contrary, Seller's responsibility in connection with the Property shall cease at closing, and closing shall constitute Buyer's acceptance of the Property unless provision is otherwise made in writing."

The Agreement further provided that Weatherspoon would have the property inspected by a pest control service. The Agreement stated,

> If visible evidence of active or previous infestation is indicated, Seller agrees to, *prior to closing*, (A) treat said infestation and correct structural damages resulting from said infestation and provide documentation evidencing correction of same and/or (B) provide documentation, satisfactory to lender (if applicable), indicating that there is no structural damage resulting from any previous infestation.

(Emphasis supplied.)

Subsequently Westminster conducted its inspection of the property in accordance with the Agreement and discovered certain matters for repair. Although Westminster submitted a proposed amendment to the contract reducing the purchase price to $31,000, it never submitted an inspection report to Weatherspoon as required by the contract. Weatherspoon did not agree to the proposed amendment. Later, however, the parties entered into a letter amendment providing, in part, that Westminster was purchasing the property in an " 'as is' condition, except that Seller shall (i) remain obligated to repair all damage *as specified in the termite and wood infestation provisions of the Contract*, and (ii) be obligated to deliver at closing a clean termite letter in the form specified in the Contract." (Emphasis supplied.) The parties also agreed to close their transaction on April 15, 1997.

On the scheduled day, although Weatherspoon did not appear for the closing, she faxed Westminster an Official Georgia Wood Infestation Inspection Report, which stated termites and beetles had previously infested the property. While the report indicated that it was "not intended as a structural report," it noted that any "evidence of infestation may be synonymous with damage." It further stated that "[i]f visible evidence of active or previous infestation is reported, it should be assumed that some degree of damage is present and a diagram identifying the structure[s] inspected and showing the location of such evidence must be attached to this form." The second page contained a diagram showing evidence of prior termite and powder beetle infestation and a handwritten notation stating "Damage under bathroom areas — foundation walls" resulting from the previous termite infestation.

On April 16, 1997, after Weatherspoon did not appear at the prior day's closing, Westminster filed, but did not serve, a lawsuit seeking specific performance of the Agreement, fraud and breach of contract.

The transaction ultimately closed on April 18, 1997.

1. Westminster's first three enumerations argue that the trial court erred in granting summary judgment on its breach of contract claim. Westminster argues that it was error to hold that it waived its claims for breach of contract when it agreed to proceed to closing without requiring full performance by Weatherspoon.

The parties' original Agreement obligated Weatherspoon to repair any structural damage and provide written documentation of the repairs *prior to closing*. The subsequent letter amendment reiterated that Weatherspoon was to abide by the termite inspection provision of the original Agreement, i.e., that she was to repair any structural damage prior to closing.

Westminster received a termite letter noting prior infestation and possible structural damage on April 15. Weatherspoon never fur-

nished any documentation showing that this structural damage had been corrected as required by the Agreement. Nevertheless, on April 18, Westminster knowing that Weatherspoon had not fulfilled her obligations under the Agreement, proceeded with the closing.

> [Westminster] inspected the termite letter before the closing and knew then that it did not conform [with the parties' Agreement]. [Westminster] could have delayed the closing until [it] felt confident that the termite problem was under control or [it] could have chosen not to close. [It] did neither. By proceeding with the closing, [it] waived any right [it] may have had under the contract pertaining to the termite clearance letter.

*Davi v. Shubert*, 168 Ga. App. 420, 421 (A) (309 SE2d 415) (1983) (finding that purchasers waived their rights where the inspection report showed evidence of active termite infestation); *Leeuwenburg v. Clark*, 228 Ga. App. 615 (492 SE2d 263) (1997) (finding seller's duties to repair structural damage waived where buyer failed to demand documentation before closing evidencing repair of any structural damage resulting from a termite infestation as required by the contract).

Westminster argues this case is distinguishable from *Leeuwenburg* and *Davi*, because the parties signed a closing document stating, in part, "As part of the consideration of this sale, the contract between the parties is by reference incorporated herein and made a part hereof; the terms and conditions contained therein shall survive the closing and shall not merge upon delivery of the Warranty Deed." Westminster argues that under this clause Weatherspoon's obligation to repair survived the closing.

However, the sales agreement in *Leeuwenburg* also contained a survival clause. *Leeuwenburg v. Clark*, 228 Ga. App. at 616. We held that

> [b]ecause the Sales Agreement [there] specifically required the sellers to perform the obligations at issue prior to closing, and the buyers were aware of the breach before closing, the buyers waived such performance by proceeding with closing. . . . A survival clause in the Sales Contract cannot breathe life into a contract where, as here, the provision has been previously waived.

Id. The fact that the survival clause in this case was in a closing document makes no difference. The termite inspection provision here also required performance prior to closing. The survival clause cannot "breathe life" into this provision where Westminster waived its

rights by closing without requiring performance.

We also disagree with Westminster's contention that its prior-filed lawsuit demonstrates its intention not to waive Weatherspoon's repair duties. The mere filing of a lawsuit does not alter the parties' rights and obligations as defined by the Agreement. Moreover, the filing of the complaint simply reiterates the fact that Westminster was aware of Weatherspoon's non-performance prior to closing, yet still chose to proceed.

2. The trial court also correctly granted summary judgment on Westminster's fraud claim. The tort of fraud in Georgia has five elements: (1) false representation by defendant; (2) scienter; (3) intention to induce plaintiff to act or refrain from acting; (4) justifiable reliance by plaintiff; and (5) damage to plaintiff. See *Klusack v. Ward*, 234 Ga. App. 178, 179 (1) (507 SE2d 1) (1998). Summary judgment is appropriate where no jury issue exists on at least one issue of a plaintiff's case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

The parties' Agreement, even as amended, required that any termite-related repairs be completed prior to closing. Before closing, Weatherspoon notified Westminster of a prior termite infestation and of possible damage, and never indicated that she had made any repairs. Thus, Weatherspoon did not hide information and Westminster did not rely on any concealed material fact in deciding to close. Summary judgment was therefore appropriate. See *Davi*, 168 Ga. App. at 423.

*Judgment affirmed. Smith and Eldridge, JJ., concur.*

DECIDED APRIL 29, 1999.

*Kitchens, Kelley & Gaynes, David F. Cooper*, for appellant.
*Hardigg & Hardigg, Glenda W. Hardigg*, for appellee.