A99A2182, A99A2183. POWER v. GEORGIA EXTERMINATORS, INC. et al.; and vice versa.
(532 SE2d 475)

RUFFIN, Judge.

Nancy Power purchased a house that was infested with termites. She sued the sellers, their real estate agent, the company that provided the termite infestation report, and two representatives of the company, alleging that all defendants had defrauded her and that the exterminating company and its representatives were negligent in inspecting and treating the house. The parties filed cross-motions for summary judgment, and the trial court granted summary judgment in favor of all defendants except with respect to the negligence and

---

fraud claims against the exterminating company and its two representatives.[1] In Case No. A99A2182, Power appeals the order of the trial court. In Case No. A99A2183, the exterminating company and its representatives appeal. As the two cases involve the same operative facts, we have consolidated them on appeal. For reasons that follow, in Case No. A99A2183, we affirm, and in Case No. A99A2182, we affirm in part and reverse in part.

On a motion for summary judgment, the movant bears the burden of demonstrating that there is no genuine issue of material fact and that the undisputed facts, viewed in favor of the nonmovant, warrant judgment as a matter of law.[2] So viewed, the record demonstrates that, in November 1994, Patsy Bryan, her husband Thomas, and her father, Glenn Newton, purchased a house owned by Jan Harper for $75,000. At the time of the purchase, Patsy Bryan knew there was termite damage in one of the back bedrooms. But, according to a Georgia Exterminators' wood infestation report dated November 19, 1994, there was no active infestation.

The new owners decided to sell the house, and in January or February 1995, real estate agent Al Sawyer showed the house to Power. Patsy Bryan, who was present when Power first walked through the house, told Power that she was having work done in the back bedroom to repair termite damage. According to Power, both Sawyer and Bryan told her that the termite damage "was old damage and the only damage and it was all taken care of." Power did not question them further.

Power agreed to purchase the house for $104,000, and, on February 10, 1995, the parties entered into a sales contract. According to the contract, the buyer had a right and responsibility to inspect the house. If the inspection disclosed any defects in the house, the buyer was required to furnish a copy of the report to the seller along with a proposed amendment to the contract setting forth any defects that the buyer wanted repaired or replaced. The contract further provided that, if the buyer failed to provide a copy of the inspection report to the seller within ten days of the contract signing, the buyer waived the right to any repairs.

With respect to wood infestations, the contract required that the seller provide a wood infestation report from a licensed pest control operator,

> certifying that accessible areas are free from all wood-destroying organisms for a period of 90 days. If damages are

---

[1] Although the real estate agent did not file a motion for summary judgment, the trial court, sua sponte, granted summary judgment in his favor.

[2] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

indicated, Seller shall not be responsible for correcting any structural and/or substantial damages prior to closing. . . . Said inspection will be acceptable only if made no longer than thirty (30) days prior to the date of closing. In the event any termite inspection reveals termites, or wood-destroying organisms, or damage therefrom, Seller shall have the option (a) subject to the Buyer's option to waive such defect, to correct the problem prior to closing, or (b) to void this Contract.

In accordance with this provision, the sellers provided Power with a wood infestation report prepared by Georgia Exterminators on March 27, 1995.

Power opted not to have the house professionally inspected. Sawyer told Power that home inspections were expensive and that, because the house had just been inspected in November 1994, it did not need to be inspected again.[3] Accordingly, rather than hiring a home inspector, Power paid her cousin, Henry Johnson — whom she described as a "handyman" — $60 to look at the house. According to his report, Johnson found "substantial termite damage" in one of the back bedrooms, but he did not see any signs of an active infestation.

Johnson made additional repair suggestions not related to the termite damage, and Patsy Bryan agreed to make most of them. Following the repairs, Power had her friend, Tim Miller, look at the property. Like Johnson, Miller was not a home or a termite inspector.

Power then closed on the house. In June 1995, several months after closing, Power noticed a cloud of bugs she thought were termites flying near a window. She called Georgia Exterminators, and Ricky Douglas, a representative of the company, came to the house. According to Power, Douglas identified the flying insects as ants and treated the house with Orthene, which kills ants.

Power lacked confidence in Georgia Exterminators, so she had other pest control companies inspect her property. Between June and November 1995, representatives from both Terminix and Orkin inspected the house and found extensive termite damage throughout the house. The representative from Terminix told Power that Georgia Exterminators' treatment to prevent a termite infestation had been inadequate, and he suggested that she contact the Department of Agriculture.

In fall 1995, Power had wallpaper removed in another bedroom and found live insects in the Sheetrock. She subsequently learned

---

[3] In her brief, Power contends that Patsy Bryan told her that the house did not need to be reinspected. But according to Power's deposition, which she cites in her brief, Sawyer made the statement.

that she had a live termite infestation that had caused extensive damage to the structure of the house.

Power sued Patsy Bryan, Thomas Bryan, Newton (collectively the sellers), Sawyer, as well as Georgia Exterminators, Douglas, and Nelson (collectively Georgia Exterminators) for fraud, asserting that all defendants had known about the termite damage and had actively concealed the extent of the damage from her. She also claimed that Georgia Exterminators, Douglas, and Nelson had been negligent in their inspection and treatment of the house. She attached to her complaint the affidavit of Maxcy Nolan, an entomologist, who averred that he inspected the property on February 20, 1997, and found "clearly visible damage of previous termite and powder post beetles in some areas" that "had clearly existed for many years."

The sellers and Georgia Exterminators each filed separate motions for summary judgment, and Power filed a motion for partial summary judgment against the sellers as to liability only. The trial court granted the sellers' motion for summary judgment and denied Power's motion. The trial court also granted, sua sponte, summary judgment to Sawyer. With respect to Georgia Exterminators, the trial court ruled that these defendants may be held liable "only for damage which would have been identified by an inspection conducted in conformity to standards for inspections in the termite protection industry." But the trial court also stated that Power was entitled to proceed with her fraud claim against Georgia Exterminators. Both Power and Georgia Exterminators appeal.

### Case No. A99A2182

1. In her first two enumerations of error, Power asserts that the trial court erred in denying her motion for partial summary judgment as to the sellers and in granting the sellers' motion for summary judgment. We disagree.

Under Georgia law, the tort of fraud has five elements: (1) false representation by the defendant; (2) knowledge that the representation is false at the time made; (3) intent to induce plaintiff to act or refrain from acting; (4) justifiable reliance by plaintiff; and (5) damage to plaintiff.[4] In an action alleging fraudulent concealment, "the allegedly defrauded party must prove that the alleged defrauder[s] had *actual*, not merely constructive, knowledge of the fact concealed."[5]

---

[4] *Westminster Holdings v. Weatherspoon*, 237 Ga. App. 819, 822 (2) (517 SE2d 80) (1999).

[5] (Punctuation omitted; emphasis in original.) *Webb v. Rushing*, 194 Ga. App. 732, 733 (1) (391 SE2d 709) (1990).

Here, there simply is no evidence that Patsy Bryan, Thomas Bryan or Newton had any actual knowledge of the additional termite damage or that they made any false representations to Power. The record demonstrates that neither Thomas Bryan nor Newton ever visited the property prior to closing, much less that they knew the condition of the property. Although Patsy Bryan had visited the property and was aware of pre-existing termite damage in one back bedroom, she told Power about that damage.[6] Bryan denied knowing about any additional damage.

Power contends that the defendants must have learned of the extensive termite damage while repairing the pre-existing damage and chosen to conceal the damage rather than repair it. But she provides no evidence to support her contention. Indeed, the contractor who repaired the pre-existing termite damage swore that he did not conceal any additional termite damage and that, if a client asked him to conceal such damage, he "would walk off the job." Moreover, neither Power nor her cousin, Johnson, saw any signs of additional termite damage prior to closing. Under these circumstances, there simply is no evidence from which it can be inferred that the sellers had knowledge of additional termite damage, much less that they concealed this information from Power. "While fraud may be proved by slight circumstances, it must amount to more than mere speculation."[7] As Power's fraud claim is based on mere speculation, the trial court did not err in granting the sellers' motion for summary judgment and in denying Power's motion.[8]

2. In addition to the sellers, the trial court, sua sponte, granted summary judgment to Sawyer on the ground that the claims against him were also predicated on alleged misrepresentations regarding known termite damage. Power asserts that this was error because there are facts that pertain solely to Sawyer that preclude summary judgment in his favor. Once again, we disagree.

Georgia law allows a trial court to grant summary judgment sua sponte, but the grant must be proper in all respects and the record must support the judgment.[9]

Power points to the following evidence in support of her contention that the trial court erred: (1) Sawyer told her that the house did not need to be inspected; (2) Sawyer said that he would pay to replace

[6] See *Westminster Holdings*, supra (no fraud claim where purchaser knew of pre-existing termite damage).

[7] *Clay v. Clay*, 269 Ga. 527 (501 SE2d 208) (1998).

[8] Compare *Quill v. Newberry*, 238 Ga. App. 184 (518 SE2d 189) (1999) (issue of fact regarding fraudulent concealment of termite damage where owner recently installed carpet over floor with obvious termite damage and it appeared floor had been propped up).

[9] *Thomas v. Phillips*, 240 Ga. App. 600, 602 (1) (524 SE2d 298) (1999).

the Sheetrock and ceiling in the bathroom; and (3) Sawyer told her that he represented her interests rather than the interests of the sellers. Although Sawyer denies all of these allegations, for purposes of summary judgment, we treat them as true.[10] But even if true, none of the statements shows that Sawyer knew about the extent of the termite damage. Absent evidence that Sawyer had any knowledge of additional termite damage or that he concealed this information from Power, the trial court properly granted summary judgment to Sawyer.[11]

3. Power also sued Georgia Exterminators for fraud, negligent inspection, and negligent treatment of the house. In its order, the trial court correctly noted that, as a general rule, inspectors are liable only for damage that was present at the time of the inspection and that should have been found during a competent inspection. As the trial court recognized,

[a] homeowner may recover for negligent inspection when the evidence shows damage was present and should have been discovered in the course of an inspection. Discovery of damage without proof it had been present at the time of an earlier inspection does not give rise to an action for negligent inspection.[12]

Because Power had the house repaired before any inspector could ascertain which portion of the damage should have been discovered by a nonnegligent inspection, the trial court ruled that Power's recovery was limited to the damage that her expert, Nolan, listed in his affidavit.

However, the trial court failed to address Power's negligent treatment claim. A homeowner also may recover for negligent treatment of a house.[13] Thus, Georgia Exterminators can be held financially responsible for any damage proximately caused by its negligence in treating the house.[14]

Here, the record shows that, after closing, Power had Georgia Exterminators treat the house for an insect infestation. Although Georgia Exterminators told Power the insects were ants, the extensive termite damage and the fact that subsequent inspections revealed an active termite infestation support Power's contention that the insects were, in fact, termites. The record also demonstrates

---

[10] *Frank v. Fleet Finance &c.,* 238 Ga. App. 316, 317 (518 SE2d 717) (1999).

[11] *Clay,* supra.

[12] (Citation and punctuation omitted.) *Orkin Exterminating Co. v. Durden,* 189 Ga. App. 479, 481 (1) (376 SE2d 376) (1988).

[13] See id. at 480-481.

[14] Id. at 481.

that the Georgia Department of Agriculture, which monitors the pest control industry, fined Georgia Exterminators for failure to comply with proper treatment standards. This evidence suggests that the company and its representatives were negligent.[15]

In its order, the trial court did not account for Georgia Exterminators' potential liability for additional termite damage proximately caused by its negligent treatment of Power's house. Thus, the trial court erred in this regard.

### *Case No. A99A2183*

4. In their first enumeration of error, Georgia Exterminators asserts that the trial court erred in failing to grant summary judgment in full with respect to Power's negligent inspection claim. For reasons set forth in Division 3, however, we disagree.

5. Georgia Exterminators also asserts that the trial court erred in failing to grant it summary judgment based on Power's failure to exercise due diligence. According to Georgia Exterminators, Power's failure to have the house inspected despite the fact that she knew the house had sustained termite damage precludes her from recovering for fraud.[16]

"One allegedly defrauded must have exercised due diligence to discover the fraud perpetrated against [her] before [she] can recover."[17] But here, appellant walked through the house several times prior to closing and had her cousin assist her in examining the house for defects. Neither Power nor the cousin noted any signs of termite damage. Where defects are not obvious, such defects are not discoverable through due diligence.[18] Although, in hindsight, it would have been prudent for Power to retain a professional home inspector, we cannot say that her failure to do so constitutes lack of due diligence as a matter of law.[19] Thus, the trial court did not err in failing to grant summary judgment to Georgia Exterminators based on Power's lack of due diligence.

*Judgment affirmed in Case No. A99A2183. Judgment affirmed in part and reversed in part in Case No. A99A2182. Andrews, P. J., and Ellington, J., concur.*

---

[15] See *Walter v. Orkin Exterminating Co.*, 192 Ga. App. 621, 624-625 (3) (385 SE2d 725) (1989) (exterminating company's violation of regulation constituted negligence per se).

[16] Georgia Exterminators mischaracterizes Power's claim as one for "negligent misrepresentation," but it is, in fact, a claim of fraud.

[17] (Punctuation omitted.) *Delk v. Tom Peterson Realtors,* 220 Ga. App. 576, 577 (469 SE2d 741) (1996).

[18] *Brookshire v. Digby*, 224 Ga. App. 512, 517 (481 SE2d 250) (1997).

[19] Id.

DECIDED MARCH 24, 2000 —
RECONSIDERATION DENIED APRIL 6, 2000.

*Vincent D. Sowerby*, for appellant.
*Decker & Hallman, William W. Briggs, Gilbert, Harrell, Gilbert, Sumerford & Martin, Lisa G. Wood*, for appellees.