A99A1888. MARKOWITZ et al. v. WIELAND et al.
A99A1889. JOHN WIELAND HOMES, INC. v. MARKOWITZ et al.
(532 SE2d 705)

MILLER, Judge.

Jacob and Charlene Markowitz sued John Wieland, John Wieland Homes, Inc., Wieland Realty Associates, Inc., and Jeff Akin (collectively the "Wieland Group") alleging conspiracy to defraud, breach of contract, and Georgia Racketeer Influenced & Corrupt Organizations Act ("RICO") violations. The Wieland Group moved for summary judgment, arguing (1) that the Markowitzes did not prove the alleged predicate acts necessary to establish a RICO violation, (2) that the merger clause in the sales contract precluded any claim of fraud, and (3) that they did not breach the contract provisions as alleged. The trial court granted summary judgment in favor of the Wieland Group on the fraud and RICO claims but denied their motion for summary judgment on the breach of contract claim against John Wieland Homes. John Wieland Homes and the Markowitzes appeal.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] The Wieland Group as the movants must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party,

---

[10] *Prine v. State*, 237 Ga. App. 679, 680 (2) (a) (515 SE2d 425) (1999).
[1] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

warrant judgment as a matter of law.[2]

Viewed in this light, the relevant facts are as follows. The Markowitzes, desiring to purchase a home, paid a $2,000 deposit to select a lot in a subdivision where John Wieland Homes was the builder. They subsequently selected lot 13 and engaged in discussions with a representative of John Wieland Homes, Jeff Akin, as to the future location of the amenities. They were given two maps which showed the amenity area without notations of the lots, one subdivision map that had "amenity area" typed below lots 13 and 14, and another subdivision map which indicated the lots without reference to the amenity area. Akin assured them that the amenities would not be located behind their lot but would be behind adjacent lot 14 and completely out of view from their property. After this assurance, the Markowitzes signed the contract and purchased the home.

More than a year later, the amenity area was constructed behind the Markowitzes' home. The parking lot and the cabana were expanded, and the entire amenity area was shifted closer to their home. The Markowitzes were subject to noise, headlights from cars, trash behind their home, and a lack of privacy. The Markowitzes also contend that John Wieland Homes failed to repair certain items under warranty, including paint on the siding of the home, and that it used inferior grade lumber.

### Case No. A99A1888

1. The Markowitzes argue that defendant Akin's representations induced them to enter into the sales agreement. They also claim that the subdivision lot map was a fraudulent misrepresentation because when shown to them at closing, it did not show notice of a pool, parking area, or cabana that was to be located behind their property.

The Wieland Group points to paragraph 28 of the contract, which states:

> Purchaser acknowledges that current development plans for this community are subject to change without notice and no guarantees are made that any of the components presently proposed will be part of the development, or that additional components will not be added to the development. If some or all of such components are provided, no guarantees are made as to the date of availability for use or that current plans will accurately reflect actual construction. The provisions of this paragraph shall survive this agreement.

---

[2] Id.

The contract also provides that:

> This contract constitutes the sole and entire agreement between the parties hereto and no modification of this contract shall be binding unless attached hereto and signed by all parties to this agreement. NO REPRESENTATION, PROMISE, OR INDUCEMENT NOT INCLUDED (WHETHER MADE BY AN AGENT OR REPRESENTATIVE OF SELLER OR OTHERWISE) IN THIS CONTRACT SHALL BE BINDING UPON ANY PARTY HERETO. The provisions of this paragraph shall survive this agreement.

They argue that paragraph 28 of the contract precluded any claim of fraud by the Markowitzes and that Akin never represented the exact location of the amenities. They further argue that the map to which the Markowitzes refer was not part of the contract and that the lot diagram attached to the contract plainly shows that the amenities were to be developed behind their lot.

The tort of fraud has five elements: (1) false representation by the defendant, (2) scienter, (3) an intention to induce the plaintiff to act or to refrain from acting, (4) justifiable reliance by the plaintiff, and (5) damages.[3] But where a purchaser affirms a contract which contains a merger or disclaimer provision and retains the purchased item, he is estopped from asserting that he relied upon the seller's misrepresentation, and his action for fraud must fail.[4] The presence of a merger clause in the contract is determinative if the defrauded party has not rescinded but has elected to affirm the contract.[5] Paragraph 28 in this contract informs the purchaser that community development plans may change without notice, and the merger clause precludes any reliance on oral representations.

Although the Markowitzes attempted to negotiate a "swap" of their home for one on a more expensive lot, when this did not develop, they sued only for money damages. The Markowitzes' reliance on *Crews v. Cisco Bros. Ford-Mercury*[6] is misplaced as the plaintiffs in that case sued for rescission of contracts. Even if the request to "swap" their home for another were considered an attempted rescission, the Markowitzes sought only money damages and failed to seek rescission in their complaint. They have therefore affirmed the contract. Thus, the court did not err in granting summary judg-

---

[3] *Buford-Clairmont Co. v. Cato Corp.*, 241 Ga. App. 50, 53 (2) (526 SE2d 104) (1999); *Westminster Holdings, Ltd. v. Weatherspoon*, 237 Ga. App. 819, 822 (2) (517 SE2d 80) (1999).

[4] *Estate of Sam Farkas v. Clark*, 238 Ga. App. 115, 118 (1) (517 SE2d 826) (1999); *Roth v. Bill Heard Chevrolet*, 166 Ga. App. 583-584 (305 SE2d 31) (1983).

[5] *Owens v. Union City Chrysler-Plymouth*, 210 Ga. App. 378, 379 (436 SE2d 94) (1993).

[6] 201 Ga. App. 589 (411 SE2d 518) (1991).

ment to the Wieland Group on the fraud claim.

2. The Markowitzes contend that there were sufficient facts to sustain a Georgia RICO violation. OCGA § 16-14-4 (a) provides that:

> [i]t is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.

Georgia defines a pattern of racketeering activity as engaging in at least two interrelated acts that have the same or similar intents, results, accomplices, victims, or methods of commission indictable under certain categories of state or federal law.[7] The Markowitzes claim that the Wieland Group committed three crimes constituting predicate acts under Georgia RICO: theft by deception, federal mail fraud, and influencing witnesses.

(a) *Theft by Deception.* OCGA § 16-8-3 (a) provides that a "person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property." First, the Markowitzes claim that the Wieland Group deprived them of property by creating a false impression of the future location of the amenities. They claim that they relied on the Wieland Group's representation that the amenities would be behind an adjacent lot and out of view from their property. But because the Markowitzes affirmed the contract (see Division 1), the Wieland Group correctly argues that paragraph 28 and the merger clause foreclose the Markowitzes' claim of theft by deception since any reliance on oral representations is superseded by the words of the affirmed contract.[8]

Second, the Markowitzes argue that they were given a warranty agreement which provided that structural defects in the home would be covered for ten years and that the Wieland Group failed to repair the defects as warranted, causing a decrease in the market value of their home. But to sustain an action for theft by deception the Markowitzes must show that the Wieland Group obtained their property. An unrealized diminution in the value of the property does not equate to the Wieland Group obtaining the property as the Markowitzes are still the owners. Therefore, the theft by deception claim fails as a predicate act.

---

[7] OCGA § 16-14-3 (8), (9); see *Roth v. Connor*, 235 Ga. App. 866, 872 (4) (510 SE2d 550) (1998).

[8] *Estate of Sam Farkas*, supra, 238 Ga. App. at 118 (1); *Hamilton v. Advance Leasing &c.*, 208 Ga. App. 848, 850 (2) (432 SE2d 559) (1993).

(b) *Mail Fraud*. The Markowitzes contend that their receipt of a lot reservation agreement from John Wieland through the mail (for which they submitted a deposit of $2,000) constitutes mail fraud because it was part of the overall scheme to defraud. When an alleged predicate act is mail fraud, " 'the plaintiff must have been a target of the scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme.' "[9] Pretermitting whether the action meets the definition of mail fraud, the contract language precludes a showing of reliance; thus, no mail fraud can be shown.[10]

(c) *Influencing Witnesses*. A person who does the following violates OCGA § 16-10-93 (a):

> A person who, with intent to deter a witness from testifying freely, fully, and truthfully to any matter pending in any court, . . . communicates, directly or indirectly, to such witness any threat of injury or damage to the person, property, or employment of the witness. . . .

The Markowitzes claim that John Wieland Homes influenced James Griggers, a former warranty technician with the company, to recant his original affidavit in which he stated that he was instructed to minimize his reports of damage to homeowners and was taught to "roll the ball," a method of manipulating the customer until the expiration of the warranty period. They contend that Griggers was threatened with a lawsuit and changed his testimony as a result. But we find no authority that the threat of a lawsuit amounts to conduct prohibited by OCGA § 16-10-93. We hold that such does not constitute a threat of injury or damage under the statute.[11] Because the Markowitzes have failed to establish any of the alleged criminal violations as predicate acts, their Georgia RICO claim fails, and the court did not err in granting summary judgment on this claim.

## Case No. A99A1889

3. John Wieland Homes contends the court erred in failing to grant summary judgment in their favor on the breach of contract claim. The court found that issues of fact remain as to whether John

---

[9] *Gentry v. Volkswagen of America*, 238 Ga. App. 785, 791 (4) (521 SE2d 13) (1999), quoting *Pelletier v. Zweifel*, 921 F2d 1465, 1499-1500 (11th Cir. 1991).

[10] *Gentry*, supra, 238 Ga. App. at 791 (4); *Longino v. Bank of Ellijay*, 228 Ga. App. 37, 41 (2) (491 SE2d 81) (1997).

[11] Cf. *Rolleston v. Huie*, 198 Ga. App. 49, 50-51 (2) (400 SE2d 349) (1990) (threatening civil suit does not violate OCGA § 16-8-16 nor does it state a tort claim).

Wieland Homes breached two provisions of the contract. First, the contract provided that:

> If items or materials are not available when needed, Seller may substitute items or materials of equal or better grade, in Seller's reasonable discretion. Seller may also make substitutions of equal or better grade where such substitutions would be consistent with Seller's general practice. Purchaser acknowledges that the color and grade of certain materials used in the home may vary from the selections made by Purchaser due to factors beyond the control of Seller. Purchaser agrees that industry standards, as determined in the reasonable exercise of Seller's discretion, shall govern the acceptability of any particular variance. . . . If Seller reasonably determines that any such variation is within industry standards, Purchaser shall be bound by such determination. Purchaser further acknowledges that Seller shall not be required to obtain Purchaser's consent for changes, deviations or omissions to the home during construction which do not adversely affect the value of the home and which are necessitated by: action of governmental authorities; lender; FHA or VA requirements; or particular job site conditions.

The Markowitzes claim that John Wieland Homes' use of No. 3 grade lumber instead of No. 2 grade lumber for support beams and floor joists is a breach of contract because industry standards required the better grade and that this failure to use the proper type of lumber adversely affected the value of their home. John Wieland Homes contends that it could not have breached the contract because this provision refers only to changes, deviations, or omissions from the original plans and that No. 3 grade lumber was called for by the original plans and is entirely permissible. This interpretation is not readily apparent from the contract language, which appears ambiguous. As the rules of contract construction do not resolve the ambiguity, we hold this is a jury question.[12]

John Wieland Homes next contends that use of the No. 3 grade lumber is within industry standards, while the Markowitzes have submitted affidavits from two inspectors and an engineer, explaining that the Council of American Building Officials (CABO) code requires No. 2 grade lumber for portions of the construction at issue. To succeed on the motion for summary judgment, John Wieland Homes must show an absence of evidence to support the contention that

---

[12] See *Thornton v. Kumar*, 240 Ga. App. 897, 898 (525 SE2d 735) (1999).

inferior lumber was used, which they failed to do.[13] If indeed an inadequate grade of lumber was used that established a deviation that could adversely affect the home, then it would be in breach of the contract. Thus, the court did not err in denying summary judgment to John Wieland Homes on this provision of the contract.

Second, an addendum to the contract provided that:

> Purchaser and Seller acknowledge that John Wieland Homes will be responsible for a period of 5 years from closing date to the original owner of 4536 Rutherford Drive, for any claim against the manufacturer of siding due to inadequate paint coverage. John Wieland Homes will be responsible for labor and material changes as deemed necessary within the 5 year period.

Charlene Markowitz testified that "the paint is wearing away and the siding is wearing away and it needs to be replaced," and Max Croft, a home inspector, stated in his inspection report of the Markowitzes' home that the edges of the siding do not have the recommended application of paint for protection from the elements. Because the Markowitzes have submitted evidence creating a question of fact as to whether the deteriorating paint on the home is due to inadequate paint coverage, the court also properly denied John Wieland Homes' motion for summary judgment on this portion of the breach of contract claim.[14]

*Judgments affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED MARCH 27, 2000.

*McKenney & Froelich, William J. McKenney,* for appellants.
*Alston & Bird, Robb E. Hellwig, Richard R. Hays,* for appellees.

---

[13] *Lau's Corp.,* supra, 261 Ga. at 491.
[14] See id.