A01A0410. ALIABADI et al. v. McCAR DEVELOPMENT CORPORATION.
(547 SE2d 607)

MIKELL, Judge.

On January 29, 1998, Dr. Shahrouz K. Aliabadi, and his wife, Jeanel Carlson, ("appellants") purchased a home in a DeKalb County subdivision from McCar Development Corporation ("MDC"), the builder of the home and developer of the subdivision. After the closing, appellants discovered that their house encroached upon a DeKalb County easement for an underground water line. Seeking rescission of the contract and damages for fraud, they sued MDC. MDC was granted summary judgment, and this appeal followed. We affirm.

On appeal of a grant of summary judgment, the appellate court must determine whether the trial court erred in concluding that the moving party demonstrated that no genuine issue of material fact

---

remained and that the party was entitled to judgment as a matter of law.[1] A defendant may do this by showing the court that the documents, affidavits, depositions, and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.[2] We view the evidence, and all reasonable conclusions and inferences drawn from it, de novo and in the light most favorable to the nonmovant.[3]

So viewed, the record shows that on January 28, 1998, the day before the closing, a piece of construction machinery, digging on a lot located across the street and somewhat diagonally from appellants' lot, pierced an underground water line, 30 inches in diameter. A column of water began shooting from the ground. The MDC construction supervisor who was working nearby reported the problem to DeKalb County, then left shortly after county workers arrived. DeKalb County personnel worked into the night and had repaired the pipe by the time the MDC supervisor arrived for work the next day. When appellants met with MDC for the closing later that day, MDC failed to disclose the incident.

Shortly thereafter, DeKalb County hired a surveying company to survey the entire subdivision because of its concern that some of the houses encroached upon its easement for the underground water line. The surveyor deposed that DeKalb County came to the subdivision and physically located and staked the water line. In preparing a plat, the surveyor plotted the water line's physical location. A deed recorded at the DeKalb County courthouse showed that in 1941, DeKalb County had been granted a 20-foot-wide easement for the water line. The surveyor deposed that in adding the easement to the plat, he was unable to use the metes and bounds description contained in the deed because the beginning point of the legal description was "way the heck off." He stated, "It's a description trying to describe the location of the easement. Again, back in [1941], it did not necessarily meet a met[e]s and bounds. . . . But the pipe is on the ground. . . . [With] that pipe [there is] a 20-foot wide easement." The surveyor therefore plotted the easement ten feet on either side of the physical location of the center of the water line.

When the surveyor added the existing structures within the subdivisions to the plat, he discovered that a corner of appellants' house was located only 5.15 feet from the center of the water line. The surveyor also determined that another house was situated only 9.79 feet from the center and that a third house was located directly atop the water line. According to the surveyor, "[s]omeone didn't ask to have

[1] OCGA § 9-11-56 (c).
[2] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).
[3] *Bendock v. Traton Corp. of Cobb*, 244 Ga. App. 110 (534 SE2d 849) (2000).

the existing water line located before they built the structure. . . . It's standard policy to have the utilities locate their stuff on the ground before you start digging. I think it's a state law."

The surveyor provided the plat to DeKalb County, which took the position that the easement is defined by the actual location of the water line. On April 24, 1998, the county advised Aliabadi that his house had to be removed.

Meanwhile, on April 9, 1998, appellants' home was damaged by a tornado. Within a week, an adjuster for appellants' homeowner's insurance carrier met with MDC representatives and appellants. The adjuster averred that all parties agreed that the house was a total loss as a result of the tornado damage and that MDC could demolish and rebuild the house for approximately $160,000, which reflected the original purchase price less $80,000 for the land. The insurance company issued a check in that amount to settle the loss, which included the surrounding fence, landscaping, and various household items. Thereafter, Aliabadi offered MDC $120,000 to demolish and rebuild the house in a different location. When MDC refused, Aliabadi paid $75,000 to a contractor to repair the house in its existing location.

Appellants subsequently filed this suit. The original complaint sought rescission of the contract as well as damages for fraud, breach of warranty, breach of the warranty deed, and negligence. MDC denied liability and filed a third-party complaint against DeKalb County, alleging that any damages to appellants were caused by the county's error in installing the underground water pipes outside the easement.

Pursuant to OCGA § 9-11-41, appellants later voluntarily dismissed their claims of breach of warranty, breach of warranty deed, and negligence and filed an amended complaint, seeking rescission of the sale and damages for fraud in the amount of the difference between the purchase price and the value of the property. MDC moved for summary judgment, which was granted. The trial court also dismissed the amended complaint with prejudice, dismissed MDC's third-party complaint without prejudice, and thereafter denied appellants' motion for reconsideration.

1. Appellants contend that the trial court erred in granting MDC summary judgment on their fraud claim. For a claim of actual fraud to survive summary judgment, some evidence must support each of the following five elements: a false representation by the defendant, scienter, intent to induce plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff.[4]

---

[4] *Sheffield v. Darby*, 244 Ga. App. 437, 438 (2) (535 SE2d 776) (2000).

MDC argues that appellants failed to produce any evidence of scienter and that MDC demonstrated as a matter of law that it was unaware of the encroachment before the closing. It relies on evidence showing that the physical locations of the underground water line and its accompanying easements were not determined until after the closing.

Appellants assert that the evidence raises a fact issue as to whether MDC knew of the encroachment before closing and then failed to disclose that fact. However, the affidavits of appellants' neighbors coupled with the deposition testimony of the MDC construction site supervisor, the surveyor hired by DeKalb County, and the DeKalb County Associate Director of Public Works for Water and Sewer demonstrate conclusively that MDC did not learn of the exact location of the easement, and the resulting encroachment upon it by appellants' residence, until after the closing.

Aliabadi contends that his affidavit testimony, that when the underground pipe was exposed for repair, it was obvious that the pipe ran "close" to their house, is some evidence MDC had actual knowledge of the encroachment. We do not agree. The MDC construction site supervisor deposed that after the water line break, he instructed MDC's contracted surveyors to restake the easement line to make sure that MDC was not encroaching upon it. However, it was not until approximately a week thereafter that the surveyors determined that the water line ran outside the described easement.

"Where there is no evidence of scienter, that is, that the false statement was knowingly made with false design, there can be no recovery."[5] Further, appellants' claim of fraud based upon concealment, or an omission of a material fact, fails for the same reason.[6]

Appellants also contend that MDC's representation at closing that the property was unencumbered was reckless and thus equivalent to actual knowledge of the false representation. At the closing, MDC presented appellants with an affidavit that provided as follows:

[S]aid property is free and clear from every kind and description of . . . encumbrances except as follows: NONE. . . . AFFIANT(S) further say(s) on oath . . . that Owner's possession is peaceable and undisturbed, that to

---

[5] (Citations and punctuation omitted.) *Coffee Butler Svc. v. Sacha*, 208 Ga. App. 4-5 (1) (430 SE2d 149) (1993). See also *Lau's Corp.*, supra, 261 Ga. at 491 (to survive summary judgment, plaintiff as nonmovant is obligated to "point to specific evidence giving rise to a triable issue").

[6] *ReMax North Atlanta v. Clark*, 244 Ga. App. 890, 894 (537 SE2d 138) (2000).

affiant's knowledge title to said property has never been dis-
puted or questioned. . . .

"Reckless representation of facts as true without knowledge is action-
able as a species of fraud without scienter."[7] However, we do not
reach this argument as appellants failed to raise it in the trial court.[8]
No such allegation appears in the complaint, the amended complaint,
or appellants' brief submitted in opposition to MDC's motion for sum-
mary judgment. The argument was not raised at the hearing nor in
appellants' motion for reconsideration.

Finally, appellants contend that the evidence gives rise to a tri-
able claim of constructive fraud. Constructive fraud consists "of any
act of omission or commission, contrary to legal or equitable duty,
trust, or confidence justly reposed, which is contrary to good con-
science and operates to the injury of another."[9] However, this theory
is an equitable doctrine and cannot be asserted as a means to recover
damages.[10]

2. Appellants next contend that the trial court erred in granting
summary judgment to MDC on their rescission claim. They contend
that even absent evidence of fraud, they are entitled to rescind the
contract pursuant to OCGA § 23-2-24[11] because of a mistake of fact.
Appellants urge that they did not receive what they bargained for —
a home that was free and clear of all encumbrances. But, even if that
is so, the remedy of rescission is foreclosed by appellants' actions sub-
sequent to their demand.

> Where a party who is entitled to rescind a contract . . . does
> anything which amounts to a recognition of the transaction,
> or acts in a manner inconsistent with a repudiation of the
> contract, such conduct amounts to acquiescence, and,
> though originally impeachable, the contract becomes unim-
> peachable in equity. If a party to a contract seeks to avoid it
> on the ground of fraud or mistake, he must, upon discovery

---

[7] (Citations and punctuation omitted.) *Stinson v. Artistic Pools*, 236 Ga. App. 768, 769
(2) (513 SE2d 510) (1999).

[8] *Herndon v. Ajayi*, 242 Ga. App. 193, 195 (532 SE2d 108) (2000).

[9] OCGA § 23-2-51 (b).

[10] *Wall v. Century 21 Winnerville Realty*, 244 Ga. App. 762, 765 (2) (536 SE2d 798)
(2000); *Nalley Northside Chevrolet v. Herring*, 215 Ga. App. 185, 187 (4) (450 SE2d 452)
(1994). Although constructive fraud may authorize the rescission of a contract, we have
determined that appellants are not entitled to rescission, as set forth in Division 2, infra.

[11] "In all cases of a mistake of fact material to the contract or other matter affected by it,
if the complaining party applies within a reasonable time, equity will grant relief."

of the facts, at once announce his purpose and adhere to it. Otherwise he cannot avoid or rescind such contract.[12]

Aliabadi deposed that he had demanded rescission before the tornado hit on April 9, 1998. But improvements appellants made while repairing the home are inconsistent with an intention to repudiate the contract. The record reveals that appellants added French doors between the den and exercise room, changed the damaged kitchen counters from laminate to Corian, added a kitchen cabinet, replaced the damaged kitchen fluorescent lights with can lights, removed all the damaged carpeting and replaced it with a better grade of carpeting, and in the case of the stairs, replaced the pine under the carpet with exposed hardwood oak. "These actions, in the aggregate, show that [appellants] intended to treat the home as [their] own and are indicative of [their] affirmation of the contract, not rescission."[13] Consequently, they cannot now rescind.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED MARCH 28, 2001 —
RECONSIDERATION DENIED APRIL 20, 2001.

*Arthur F. Millard, Stanley M. Lefco*, for appellants.
*Morris, Manning & Martin, Ann R. Schildhammer, Claudia Anders*, for appellee.

---

[12] (Citation omitted.) *Paden v. Murray*, 240 Ga. App. 487, 488-489 (1) (523 SE2d 75) (1999).

[13] Id. at 489 (1).