## A04A1069. MEYER et al. v. WAITE et al.

(606 SE2d 16)

MIKELL, Judge.

Francine R. Meyer and Thomas S. Wickson ("buyers") purchased a home in Roswell from Steven and Elizabeth Waite ("sellers") on April 10, 2000. Based on certain defects allegedly discovered after the closing, the buyers sued the sellers on February 15, 2002, asserting claims of breach of contract, fraudulent concealment, and rescission. The trial court granted the sellers' motion for summary judgment. The buyers appeal. We affirm as to the fraud and rescission claims but hold that a genuine issue of material fact remains on the breach of contract claim.[1]

Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law.[2] On appeal from the grant of summary judgment, we review the record de novo, construing the evidence and all reasonable inferences in favor of the nonmoving party.[3]

So viewed, the record shows that on February 6, 2000, the buyers executed a Purchase and Sale Agreement ("Agreement"), which was accepted by the sellers one week later, for $385,000. The sellers' Property Disclosure Statement, which was incorporated into the Agreement, disclosed that the roof had been "refurbished" five years earlier; that termites had been found in 1997 and 1999 and the termite damage had been repaired; that the dwelling's exterior contained untreated stucco cladding; that a new cedar deck was built in 1999; and that a termite inspection and a stucco inspection were performed in the fall of 1999. The sellers also gave the buyers a letter dated September 30, 1999, from a stucco inspector, Blair Anderton, who indicated that the hard-coat stucco cladding was in good condition, with no bulges or cracks. Anderton suggested sealing the doors and windows. The 1999 letter referenced a 1997 inspection performed

---

[1] The trial court did not address the breach of contract claim.

[2] OCGA § 9-11-56 (c).

[3] *Keller v. Henderson*, 248 Ga. App. 526, 527 (1) (545 SE2d 705) (2001).

by Anderton. In the letter issued in 1997, Anderton stated that the exterior was hard-coat stucco, not synthetic stucco. However, the report which accompanied the 1997 letter indicated that the trim accents were foam and were glued to the hard-coat stucco. The 1997 letter and report were not provided to the buyers.

The Agreement gave the buyers the right to inspect the property and to ask the sellers to repair any defects found therein. In addition, Special Stipulation No. 4 provided that "Purchaser shall keep the right to declare this contract null and void should stucco inspection reveal major defects in property and all earnest money shall be returned to Purchaser." The buyers secured the services of a general home inspector, a roof inspector, and a basement and foundation expert to perform separate examinations prior to closing. However, the buyers did not hire a separate stucco inspector.

The general home inspection revealed numerous deficiencies, including settlement and/or cracking in the front entry area, leaks in the roof, standing water in the crawl space, and wood infestation damage. Based on the report, the parties executed Amendment C to Remove Inspection Contingency, which amended the Agreement by reducing the sales price to $381,000 "in consideration of the cost of replacing the roof and other repairs." Amendment C required the sellers to repair a total of 42 items listed as deficiencies in the report, including, with regard to the stucco, "caulk/seal around all doors, windows, and areas of dissimilar materials on exterior of house to prevent moisture from entering wall cavity." Further, the sellers agreed to repair the termite damage in the living room, to provide certification from a pest control company that there was no active infestation, and to address drainage deficiencies. The property was reinspected on March 28, 2000. Because several items still needed repair, the Agreement was amended to extend the closing date to April 10, 2000, and to make the closing contingent upon the sellers' completion of the 42 repair items previously listed. The sale of the property closed on April 10, 2000.

According to the affidavit of buyer Meyer, the sellers represented at closing that all the repairs had been done and provided several receipts. The buyers did not move into the property until September 2000. During a rain, the buyers discovered that water was leaking in through the gutters and that the gutters were completely rusted through. In November 2000, the buyers sent a certified letter to the sellers requesting the receipt for the gutter work that they were supposed to perform pursuant to the amended Agreement. The sellers responded that the receipt had been provided at closing. However, the buyers obtained a repair estimate for $3,439 for repairing the gutters and down spouts. Thereafter, during the week of April 23, 2001, the buyers learned through the company that was finishing

their basement that there were paint patches on the stucco, and they claimed that the stucco had been patched and painted due to cracking. The buyer asked Anderton to reexamine the property. His inspection on May 10, 2001, again revealed that the stucco system "is still in good condition with no bulges or cracks." He commented that hair line cracks were common, as were settling bulges at the floor line.

On August 27, 2001, the buyers' counsel wrote a letter to the sellers seeking rescission of the Agreement on the ground that the sellers had misrepresented the condition of the gutters and exterior of the home. The buyers averred that they subsequently discovered termites and learned that Arrow Exterminators, who provided the termite bond, had informed the sellers that the front stoop was settling, which created access for the termites. The buyers asserted that the sellers had failed to disclose the full extent of the termite problem.

The buyers then sued the sellers alleging: (1) breach of contract by failing to replace the gutters; (2) fraudulent concealment of problems related to the stucco and the front stoop; and (3) rescission. The buyers sought damages "in an amount no less than $35,550.00," representing the diminished fair market value due to the condition of the exterior as well as the cost of replacing the gutters and painting the property every four years. Finally, the buyers prayed for attorney fees and punitive damages.

An engineer who evaluated the property on May 16, 2002, deposed that he found excessive cracking in the stucco and that it was "bowing out" on the left side of the house. This expert also deposed that insufficient soil compaction had caused the stoop to settle, allowing water to leak into the crawl space. A stucco expert inspected the house on July 9, 2002. He deposed that he saw two patches on the stucco measuring less than a square foot each as well as several small painted areas, both of which are common with hard-coat stucco, and that although the foam trim had been applied to the stucco in an unusual fashion, he did not note any problem associated with the application.

1. The buyers have enumerated 12 errors. For clarity, we divide these by claim, starting with the fraudulent concealment claim.

"The tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages."[4] A buyer who alleges fraudulent concealment must prove these same five elements, including, as a factor of

---

[4] (Citations omitted.) *ReMax North Atlanta v. Clark*, 244 Ga. App. 890, 893 (537 SE2d 138) (2000).

justifiable reliance, that he or she could not have discovered the alleged defect in the exercise of due diligence.[5] "While questions of due diligence often must be resolved by the trier of fact, that is not always the case. One may fail to exercise due diligence as a matter of law."[6]

(a) The buyers claim that the sellers fraudulently concealed cracks and bulges in the stucco by patching and painting them and that the sellers concealed the presence of synthetic stucco trim by failing to provide the 1997 letter and report. However, the 1999 letter referenced the 1997 letter, which the buyers could have obtained. Moreover, as noted above, the buyers retained the right to declare the Agreement void "should stucco inspection reveal major defects in property. . . ." Thereafter, the buyers elected not to have a separate stucco inspection performed but instead relied upon the 1999 letter provided by the sellers. In so doing, the buyers failed to exercise due diligence as a matter of law.

> The law in Georgia is well-settled that in the purchase and sale of real estate there is an underlying principle of law that one cannot be permitted to claim that he has been deceived by false representations about which he could have learned the truth of the matter and could have avoided damage. When the means of knowledge are at hand and equally available to both parties if the purchaser does not avail himself of these means he will not be heard to say, in impeachment of the contract, that he was deceived by the representations of the seller.[7]

(b) The buyers next claim that the sellers fraudulently concealed the extent of the termite damage. But they have failed to provide evidence that the sellers concealed any material fact with regard to the termite damage. The sellers marked "YES" on every box regarding termites in the Property Disclosure Statement. In a facsimile transmitted to the sellers and both Realtors prior to closing, the buyers wrote that their "inspector discovered another termite tunnel in the area where there have been previous infestations, please have Arrow [Exterminators] check, reinspect and issue a clearance letter." Moreover, Amendment C contains three paragraphs under the caption "PEST DAMAGE," requiring the sellers to repair the termite damage in the living room and provide certification from a pest

---

[5] *Hanlon v. Thornton*, 218 Ga. App. 500, 502 (2) (462 SE2d 154) (1995).

[6] (Citations and punctuation omitted.) *Fowler v. Overby*, 223 Ga. App. 803, 804 (1) (478 SE2d 919) (1996).

[7] (Punctuation omitted.) Id. at 803-804 (1), citing *Hanlon*, supra at 501-502 (1).

control company that there was no active infestation. Thereafter, the buyers received a copy of the Georgia Wood Infestation Report that contained a graph indicating previous termite infestation in multiple areas, including the area around the front stoop. "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, shall be equivalent to knowledge, in fixing the rights of the parties."[8] As the buyers received notice of termite damage and could have made further inquiry prior to closing, no issue of fact remains with regard to any alleged termite damage.

(c) The buyers also assert that the sellers fraudulently concealed the extent to which the stoop was settling. They base this claim on the fact that when they replaced the front stoop, they discovered it had been previously repaired. As with the termite damage, however, the buyers received notice of problems with the stoop prior to closing. The graph accompanying the termite letter showed previous termite infestation in the area around the front stoop. The general home inspector recommended sealing the stoop perimeter, both at the right side entry and at the front entry. The follow-up inspection on March 28, 2000, notes "pavement settling and/or cracking were observed" at the front entry area. These reports demanded further inquiry by the buyers. We note that, according to buyer Meyer's affidavit, Arrow representatives told her that the stoop was settling. Inquiry prior to closing would have led to this discovery. Therefore, this claim fails as well.[9]

(d) The buyers' claim with regard to drainage problems allegedly concealed by the sellers is unclear. There is evidence in the record that a prior prospective purchaser declined to buy the home in 1997 because of drainage problems, and the buyers complain that the sellers' failure to disclose this information is fraudulent. But the drainage was marked "substandard" on the general home inspection report and Amendment C required the sellers to address drainage problems. Therefore, the buyers cannot now assert that they had no notice of drainage problems.[10]

(e) Finally, the buyers allege a fraud claim regarding a stucco retaining wall. But this claim cannot survive summary judgment

---

[8] (Citation and punctuation omitted.) *Webb v. Rushing*, 194 Ga. App. 732, 733 (2) (391 SE2d 709) (1990). See OCGA § 23-1-17.

[9] *Webb*, supra.

[10] Id.

because they have failed to show damages, i.e., that the wall is defective. The only evidence in this regard is that the wall was repaired in 1997.

2. In four enumerated errors, the buyers argue that the trial court erred in granting summary judgment on their rescission claim. We disagree.

When alleging a claim for fraudulent inducement to enter a sales contract, a purchaser has an election of two remedies: rescission or affirmation of the contract.[11]

> Rescission, as a forfeiture of rights under an otherwise valid contract, is not favored under the law, and courts are quick to find that the right to rescind has been waived. Waiver generally is found where the intent to rescind is not asserted in a timely fashion or where the purchaser has taken some action inconsistent with the intent to rescind, such as making improvements to the property.[12]

In *Aliabadi v. McCar Dev. Corp.,*[13] we held that a buyer who made improvements in addition to those repairs necessary to return the house to a habitable condition, such as adding French doors, was not entitled to rescind the contract.[14] In this case, the buyers renovated the basement, among other things, after allegedly discovering undisclosed defects in the property. They did not demand rescission until 16 months after closing. "These actions . . . show that appellants intended to treat the home as their own and are indicative of their affirmation of the contract, not rescission."[15] Accordingly, the trial court did not err in granting summary judgment on the rescission claim.

3. Finally, the buyers contend that the trial court erred in failing to consider their breach of contract claim. We agree. The Agreement contained a survival clause which provided that "[a]ll conditions or stipulations not fulfilled at time of closing shall survive the closing until such time as the conditions or stipulations are fulfilled." In this case, Amendment C required the sellers to "repair or replace worn gutters." Meyer's averment in her affidavit that she discovered after a rain that the gutters were rusted through coupled with a repair

---

[11] *Buckley v. Turner Heritage Homes*, 248 Ga. App. 793, 795 (2) (547 SE2d 373) (2001).

[12] (Citation and footnotes omitted.) *Conway v. Romarion*, 252 Ga. App. 528, 530-531 (1) (557 SE2d 54) (2001).

[13] 249 Ga. App. 309 (547 SE2d 607) (2001).

[14] Id. at 314 (2).

[15] (Punctuation and footnote omitted.) Id.

estimate in the record for $3,439 are sufficient to create an issue of fact as to whether the sellers repaired or replaced the gutters.

The sellers argue that the buyers waived this condition of the Agreement by failing to postpone the closing until the gutters were repaired. This argument is based on three cases in which home buyers proceeded to closing after receiving Georgia Wood Infestation Reports showing either active or previous termite infestation and/or structural damage caused by the infestation.[16] In each case, the buyers knew either that the termite letter did not conform to the contract[17] or that the sellers had not provided documentation evidencing the repair of any structural damage.[18] Therefore, the buyers were aware of the breach before closing but consciously elected to disregard that knowledge. In this case, there is evidence that the buyers were unaware that the gutters had not been repaired due to contrary representations by the sellers at closing.

The sellers additionally assert that the buyers' failure to inspect the repairs prior to closing, as required by Amendments C and D, constitutes a waiver of the breach of contract claim as a matter of law. We disagree. Amendment C states that "Buyer agrees to review and approve requested repairs w/in three days of seller notification, but no later than 10 days prior to closing." Amendment D states that "Buyer will review and approve repairs on March 28, 2000." Meyer stated in her affidavit that the buyers' inspector was unable to determine the condition of the gutters on that day because they were clogged with "substantial garbage and clutter" due to work being done on the home. This evidence raises a factual question concerning the buyers' compliance with the Agreement. Accordingly, the sellers are not entitled to summary judgment on the claim that they breached their agreement to repair or replace the gutters.[19]

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Barnes, J., concur.*

---

[16] *Westminster Holdings v. Weatherspoon*, 237 Ga. App. 819 (517 SE2d 80) (1999) (buyer waived termite damage repair requirement by proceeding to closing despite seller's failure to provide documentation of repair as required by agreement); *Leeuwenburg v. Clark*, 228 Ga. App. 615 (492 SE2d 263) (1997) (seller's duties to repair structural damage waived where buyer failed to demand documentation evidencing repair of structural damage before closing); *Davi v. Shubert*, 168 Ga. App. 420 (309 SE2d 415) (1983) (purchasers who proceeded to closing although the inspection report showed evidence of active termite infestation waived their rights).

[17] *Davi*, supra at 421 (A).

[18] *Westminster Holdings*, supra at 821 (1); *Leeuwenburg*, supra at 616.

[19] See *Gaudet v. Starr*, 215 Ga. App. 451, 452 (1) (451 SE2d 476) (1994) (termite damage repair agreement survived closing); *Sullivan v. Cheshire*, 190 Ga. App. 763, 764 (1) (380 SE2d 294) (1989) (facts showed parties intended collateral agreement to survive closing).

DECIDED SEPTEMBER 22, 2004 —
RECONSIDERATION DENIED NOVEMBER 1, 2004.

*Stanley M. Lefco*, for appellants.
*McCalla, Raymer, Padrick, Cobb, Nichols & Clark, Matthew W. Dominick*, for appellees.