A10A0547, A10A0548. POLLMAN et al. v. SWAN et al.; and vice versa.
(699 SE2d 582)

SMITH, Presiding Judge.

These appeals arose from a dispute over the sale of a townhome in Savannah, Georgia. In the main appeal, Case No. A10A0547, purchasers Stephen E. Pollman, Jr., and Linda C. Pollman ("the Pollmans") appeal from the trial court's grant of partial summary judgment in favor of builders Louise Swan, Forest River, LLC, Swan Construction, Inc., and Montgomery Station Owners Association, Inc. (collectively "the Swan defendants"), and realtors Coastal Neighborhood Realty, Inc., Rebecca Holcombe, and Marie Harbuck (collectively "the Coastal defendants"). In the cross-appeal, Case No. A10A0548, the Swan defendants appeal from the trial court's denial of summary judgment to Louise Swan on the Pollmans' fraud claim and from the denial of summary judgment to the Swan defendants on the Pollmans' claim for punitive damages. Because the trial court should have granted summary judgment to all defendants, we affirm in Case No. A10A0547 and reverse in Case No. A10A0548.

In June 2004, the Pollmans entered into a "New Construction Purchase and Sales Agreement" with Swan Construction, Inc. for a townhome in a development known as Montgomery Station. The contract provided in part:

> This Agreement constitutes the sole and entire agreement between the parties hereto and no modification or assignment of this Agreement shall be binding unless signed by all parties to this Agreement. No representation, promise, or inducement not included in this Agreement shall be binding upon any party herein.

The contract further provided:

> Buyer and Seller acknowledge that they have not relied upon any advice, representations or statements of Brokers and waive and shall not assert any claims against Brokers involving the same. Buyer and Seller agree that Brokers shall not be responsible to advise Buyer and Seller on any matter including but not limited to the following: any

matter which could have been revealed through a survey, title search or inspection of the Property; the condition of the Property, any portion thereof, or any item therein; building products and construction techniques; the necessity or cost of any repairs to the Property. . . .

The closing took place on August 25, 2004, as scheduled in the contract.[1] In October 2005, the Pollmans filed suit against the Swan defendants and the Coastal defendants. Their complaint, as ultimately amended, sought damages for fraud, violation of the Georgia RICO act, breach of contract, and negligence; it also sought actual and punitive damages. The Pollmans also amended their complaint to add as a defendant the closing attorney, who settled with the Pollmans in August 2008. As part of the settlement agreement, the Pollmans sold the townhome to the closing attorney.

The trial court granted summary judgment to all defendants on the Pollmans' RICO claim and their claims for breach of contract and negligence. With respect to the fraud claim, the trial court granted summary judgment to all defendants but Louise Swan, and with respect to the punitive damages claim to the Coastal defendants only. These appeals followed.

The Pollmans appeal from the trial court's grant of summary judgment to the Swan defendants on the breach of contract and negligence claims, the grant of summary judgment to all but Louise Swan on the fraud claims, the grant of summary judgment on the RICO claim, and the grant of summary judgment to the Coastal defendants on the claim for punitive damages. In their cross-appeal, the Swan defendants appeal from the trial court's denial of summary judgment on the punitive damages claim and from the denial of summary judgment to Louise Swan on the fraud claim.

1. The trial court correctly granted summary judgment to all defendants on the Pollmans' claims for breach of contract and negligence.

As a general rule, damages for defective construction, whether those damages are the result of a breach of contract or negligence of the contractor, are determined by measuring the cost of repairing or restoring the damage, unless the cost of repair is disproportionate to the property's probable loss of value. Where demanded by the facts of a case, courts also have determined damages in such cases

---

[1] The Pollmans' daughter was attending college in Savannah, and Linda Pollman testified that they wanted to get her "moved in . . . before school started."

by measuring the diminution in value of the property after the injury occurred.

(Citations omitted.) *John Thurmond & Assoc. v. Kennedy*, 284 Ga. 469, 470 (1) (668 SE2d 666) (2008). These distinct measures of damages are complementary, because

> proof of the cost of repair because of the defective construction is illustrative of the difference in value claimed as damages, and is more likely to represent the true damage suffered from the failure of a contractor to complete his contract than would the opinion of an expert as to the difference in values.

(Citations and punctuation omitted.) Id.

As the trial court noted, the Pollmans failed to demonstrate evidence of damages. In their brief, the Pollmans point to no evidence showing the cost of repairs or difference in market value at the time the injury or breach occurred, asserting only that they have proved damages by showing the price for which they eventually sold the townhome to the closing attorney as part of a settlement in 2008, four years after their purchase. We question whether this constitutes any evidence of fair market value, given that the sale was in the context of this litigation and a settlement with a party defendant.[2] The agreement itself recites that it does not reflect the value of the property or the damages claimed in this action. But even assuming that a sale pursuant to a settlement agreement could be some evidence of fair market value, the measure of damages is the value not four years later, but *at the time the injury or breach occurred. Kennedy*, supra at 470 (1); see also *Mills v. Parker*, 267 Ga. App. 334, 335 (1) (599 SE2d 301) (2004) (breach of real estate sales contract). "[T]estimony of the sale of the identical parcel at a different price and time fails to establish as a matter of law the precise market value as of the date of the breach. [Cits.]" *Dunn v. Venture Bldg. Group*, 283 Ga. App. 500, 504 (2) (642 SE2d 156) (2007). The trial court therefore properly granted summary judgment to all defendants on

---

[2] "Fair market value" is defined as the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts. The fair market value of a particular item of property is not to be determined by a forced sale price. Nor is the fair market value to be determined by the sale price of the item in a market other than that in which such item is most commonly sold to the public.

(Citation and punctuation omitted.) *Gutherie v. Ford Equip. Leasing Co.*, 206 Ga. App. 258, 260 (1) (424 SE2d 889) (1992) (adopting IRS estate tax definition of "fair market value" in foreclosure confirmation).

the Pollmans' claims for breach of contract and negligence.

2. The trial court should have granted summary judgment to all defendants on the Pollmans' fraud claims.

> When a buyer claims the seller made oral or written misrepresentations outside the sales contract to induce the sale, and elects to affirm the sales contract and sue, the same contractual defenses apply whether the suit is brought as a breach of contract or as a tort claim for fraud. In either case, because the sales contract was affirmed, the buyer is bound by the terms of the contract and subject to defenses asserted by the seller based on the contract.

(Citation omitted.) *Browning v. Stocks*, 265 Ga. App. 803, 806 (2) (595 SE2d 642) (2004). To the extent that the Pollmans claim the defendants fraudulently misrepresented the condition of the town-home, their claim "is barred by the sales contract's merger clause, which precludes [them] from asserting reliance on an alleged misrepresentation not contained within the contract. Since reliance is an essential element of fraud, [they] cannot show fraudulent misrepresentation." (Citations, punctuation and footnotes omitted.) *Resnick v. Meybohm Realty*, 269 Ga. App. 486, 489 (1) (a) (604 SE2d 536) (2004).[3]

> On the other hand, where a buyer affirms the sales contract and sues claiming, not that the seller made extracontractual oral or written misrepresentations about the purchased property, but that the seller actively or passively concealed damage or defects in the purchased property, there is no basis for using an entire agreement clause in the sales contract as a defense to the suit.

(Citations and footnote omitted.) *Browning*, supra at 806 (2). The merger clause therefore does not apply to the Pollmans' allegation that defendants actively concealed a defective bay window and the absence of a zoned HVAC system or functioning second thermostat.[4]

---

[3] The Pollmans originally asserted a claim for rescission, but they later amended their complaint to remove it, and they do not assert it on appeal.

[4] The Pollmans' contention that defendants also concealed the absence of a certificate of occupancy is without merit. A temporary certificate of occupancy was issued, but under the Code of Ordinances for the City of Savannah a permanent certificate could not be issued until "satisfactory completion of construction of a building or structure and installation of electrical, gas, mechanical and plumbing systems in accordance with the technical codes, reviewed plans and specifications, and after the final inspection." Savannah, Georgia, Code of Ordinances § 8-1039 (2). Linda Pollman testified that she was informed of this fact in a conversation with

The buyer, however, still must show justifiable reliance in making a concealment claim.

> The tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages. A buyer who alleges fraudulent concealment must prove these same five elements, including, as a factor of justifiable reliance, that he or she could not have discovered the alleged defect in the exercise of due diligence. While questions of due diligence often must be resolved by the trier of fact, that is not always the case. One may fail to exercise due diligence as a matter of law.

(Citations, punctuation and footnotes omitted.) *Meyer v. Waite*, 270 Ga. App. 255, 257-258 (1) (606 SE2d 16) (2004).

Before closing, the Pollmans hired a home inspector who specifically pointed out a problem with a bay window and recommended "having the flooring and supports for the bay window to be evaluated [sic] by a structural engineer." He also noted that repairs had been made to the window and recommended further investigation. An amendment to the sales agreement was drafted, calling for a written opinion from a licensed structural engineer that no structural defects or damage existed in the property, but it was never executed by all parties. And the Pollmans' own expert testified that "anyone familiar with ordinary construction knowledge and experience would have known there were major problems with the structure supporting this bay window." The Pollmans' home inspector also noted that the HVAC system was not fully installed or operational at the time of inspection and recommended that it be inspected when it was complete. But the Pollmans failed to do so.

At the date scheduled for closing, numerous items remained unfinished, and the Pollmans were aware of the uncompleted items. Linda Pollman acknowledged that the HVAC system, the garage door, and the stove were not installed, and that she was aware of the bay window problems. But instead of postponing the closing or placing funds in escrow to ensure completion, see generally *Wallace v. Bock*, 279 Ga. 744 (620 SE2d 820) (2005), the Pollmans closed the sale. As part of the closing, the Pollmans signed a statement that

---

a representative of the City. The Pollmans were fully aware that many items, including electrical and mechanical systems, were incomplete at the time of closing.

"[t]he conditions of the sales contract were satisfactorily met."

> The law in Georgia is well-settled that in the purchase and sale of real estate there is an underlying principle of law that one cannot be permitted to claim that he has been deceived by false representations about which he could have learned the truth of the matter and could have avoided damage. When the means of knowledge are at hand and equally available to both parties if the purchaser does not avail himself of these means he will not be heard to say, in impeachment of the contract, that he was deceived by the representations of the seller.

(Citations and footnote omitted.) *Meyer*, supra at 258 (1) (a). As in *Meyer*, here the Pollmans were placed on notice of the issues with the HVAC system and the bay window. Their home inspector recommended further investigation in both instances, but they failed to do so and chose instead to proceed with the closing. As in *Meyer*, further inquiry before closing would have led to discovery, but the Pollmans "elected not to have a separate . . . inspection performed but instead relied upon the [information] provided by the sellers. In so doing, the buyers failed to exercise due diligence as a matter of law." Id. "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, shall be equivalent to knowledge, in fixing the rights of the parties. Appellants are, therefore, chargeable with the knowledge" of the alleged defects. *Webb v. Rushing*, 194 Ga. App. 732, 733 (2) (391 SE2d 709) (1990).

The trial court therefore correctly granted summary judgment in favor of the Coastal defendants and the Swan defendants on the fraud claim, but erred in denying Louise Swan's motion for summary judgment on the same basis.

3. The trial court did not err in granting summary judgment on the Pollmans' RICO claim. As the trial court correctly observed, this case is controlled by *Markowitz v. Wieland*, 243 Ga. App. 151, 154-155 (2) (a), (b) (532 SE2d 705) (2000). Allegations of theft by deception fail as a predicate act because the defendants have not obtained the property; the Pollmans have alleged merely a diminution in value. Id. at 154 (2) (a). And "[p]retermitting whether the action meets the definition of mail fraud, the contract language precludes a showing of reliance; thus, no mail fraud can be shown." (Citations and footnote omitted.) Id. at 155 (2) (b).

4. With respect to the Pollmans' claim for punitive damages, the trial court correctly granted summary judgment to the Coastal

defendants but erred in denying summary judgment to the Swan defendants. "Since we have determined that there was no evidence to support the tort action . . . it follows that punitive damages are not supportable where the tort is not proved." (Citation and punctuation omitted.) *Clarke v. Cox*, 197 Ga. App. 83, 84 (2) (397 SE2d 598) (1990).

*Judgment affirmed in Case No. A10A0547. Judgment reversed in Case No. A10A0548. Mikell and Adams, JJ., concur.*

DECIDED JULY 8, 2010 —
RECONSIDERATION DENIED JULY 27, 2010 — 

*Tony Center*, for appellants.
*Oliver, Maner & Gray, Patrick T. O'Connor, Benjamin M. Perkins, William A. Trotter III*, for appellees.