**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 18, 2024**

# In the Court of Appeals of Georgia

A24A0213. MARION A. ALLEN, INC. et al v. BLAKE C. JOHNSTON et al.

DOYLE, Presiding Judge.

Defendants Marion A. Allen, Inc., and Lucy Allen ("Defendants") appeal from the denial of their motion for summary judgment in this action in which plaintiffs Blake C. Johnston and Courtney Johnston ("Plaintiffs") alleged fraudulent concealment in connection with the sale of residential real estate. For the following reasons, we reverse.

"Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law. On appeal, we review the grant or denial of summary judgment de novo, construing the evidence and

all inferences in a light most favorable to the nonmoving party."[1] So viewed, in 2019, Marion A. Allen, Inc., purchased real property located at 5740 Forsyth Road, Macon, Bibb County ("the Property"). Marion A. Allen is the CEO of Marion A. Allen, Inc., and the husband of Lucy Allen ("Mrs. Allen"), who is a licensed real estate agent and was the company's listing agent in the sale at issue. At the time of the 2019 purchase, the Property had been vacant for several years and had some fungus and moisture issues. Mrs. Allen discovered mold in the downstairs kitchen cabinets, which she tore out and replaced.

In late April or early May 2020, Plaintiffs viewed the Property, and on May 21, 2020, they entered into a Purchase and Sale Agreement with Marion A. Allen, Inc., (the "Agreement"). The Agreement incorporated a Seller's Property Disclosure Statement, in which Defendants represented that there had been no water intrusion and that there were no hidden defects. Plaintiffs had the Property inspected on May 25, 2020, and the inspection noted evidence of water intrusion in the basement. Mr. Johnston deposed that when they voiced their concerns about water intrusion, Mrs. Allen told them that there had never been any mold in the Property. Soon thereafter,

---

[1] (Citation and punctuation omitted.) *BPP069, LLC v. Lindfield Holdings*, 346 Ga. App. 577, 578 (816 SE2d 755) (2018).

however, because of the concerns about mold, the parties entered into an "Amendment to Address Concerns with Property Amendment #1," dated May 31, 2020, that included completing mold remediation in the basement area and a reinspection to confirm the results.

Around that same time, Plaintiffs also learned from others that there was a possible presence of mold in the Property, and they scheduled a mold and air quality inspection that was performed by EnviroCheck Systems on June 1, 2020. The report stated that previous water leaks into the crawlspace had been corrected, but elsewhere there was water damage apparently caused by water intrusion from the outside. The report included several detailed findings, noting the presence of unhealthy fungal contamination, below average air quality in a part of the basement, average air quality elsewhere in the basement, main level living room, and one of the upstairs bedrooms. The report also explained that the contamination would likely worsen if remediation did not begin soon and that following remediation, a thorough visual inspection and limited microbial sampling should be conducted. The report was provided to the Defendants.

Defendants had a mold and air quality inspection performed by a different company, Gingair, on June 10, 2020. This inspection noted poor air quality that was not within the parameters for fair indoor air quality, as well as a potential growth-limited fungal contamination in the basement bedroom; "potential colonization - moderate contamination," including Chaetomium, which is known as black mold, in the basement kitchen; and "probable colonization - high contamination" in the water heater closet stud wall. The inspection recommended that the water intrusion issues be addressed by a licensed professional, the Property be sanitized and remediated by a certified mold abatement contractor, and clearance testing be run by a third party. Mr. Johnston deposed that they asked for, but they were not given the results of the June 10 Gingair inspection and were told that the results were the same as the results of their EnviroCheck inspection. Mr. Johnston pointed out that the June 1 inspection did not reveal the presence of black mold and deposed that had they been aware that the Property contained black mold, they would not have proceeded with closing.

On June 17, 2020, the parties entered into an "Amendment to Agreement Amendment #2," in which they increased the purchase price from $460,000 to

$465,200 to help to cover the cost of remediation and agreed that receipts and a warranty for all repairs pursuant to the first amendment would be provided at closing. Plaintiffs assumed that a company called CleanCo would perform the remediation because a quote to do the work had been obtained from them. Defendants instead hired Restoration Source Consultants ("RSC") to perform the mold remediation. RSC only conducted mold remediation in a part of the basement, following the recommendations of Envirocheck.

After the remediation, Defendants had another mold and air quality inspection performed by Gingair, and received the results on the day before or the morning of closing, which Mrs. Allen emailed to Plaintiffs and provided to them at the closing. The inspection noted that the airborne fungal spores collected in the basement bedroom and kitchen had increased concentrations of fungal organisms when compared to outside air. Nevertheless, it concluded that "the remediation work done was successful in this area of the home and does pass post clearance verification at this moment in time. The total spore counts found in the areas of concern were significantly reduced and no target molds were detected in the sampling." Mr. Johnston testified that Mrs. Allen told them the post-remediation testing results were

"clear," and when asked if he followed up to make sure the work was done properly, he replied "[w]e did not follow up to see if [Defendants] had defrauded us or lied to us about the work being completed as agreed upon. . . . [Defendants] represented the work was all completed properly and we relied on those portrayals that it was done completely. So we did not follow up on their statements." Mrs. Johnston deposed that she assumed that she could trust Mrs. Allen because of her relationship with Plaintiffs' realtor, who was also Mrs. Johnston's mother. Mr. Johnston also acknowledged that he was aware that CleanCo had not performed the remediation before the closing.

Plaintiffs moved into the property on June 29, 2020, the day before the closing. After closing, Plaintiffs discovered mold in the basement and other parts of the Property. Plaintiffs' daughters discovered mold on the inside of a closet door while playing hide and seek. Mr. Johnston deposed that he believed Defendants had placed sheet rock over toxic black mold and had freshly painted or covered-up certain areas to hide the mold. Mrs. Allen deposed that she relied on Gingair's inspection report that the mold was gone.

Plaintiffs filed this action against Defendants, seeking rescission for fraud, damages for fraud, and expenses of litigation. Plaintiffs alleged that Defendants committed fraud in the sale of the Property by concealing or misrepresenting the presence, extent, and nature of mold. Plaintiffs also claimed in Count One that Defendants committed fraud in the sale of the Property by concealing or misrepresenting termite damage, defective plumbing, and electrical work.[2] Plaintiffs amended their complaint, substituting a claim for fraud in the sale of property for their rescission claim, specifying that their second fraud claim was based on the abatement of mold, and seeking punitive damages.

Defendants moved for summary judgment, arguing that Plaintiffs' claims failed because they did not exercise due diligence and did not justifiably rely on Defendants' statements and conduct. Plaintiffs responded that there was a material question of fact as to whether they exercised due diligence, acknowledging their knowledge of the mold but maintaining that they justifiably relied on the defendants' conduct and statements. The trial court issued an order denying in part and granting in part

[2] Claims related to termite damage and other alleged defective work are not at issue in this appeal. Defendants asserted a counterclaim that Plaintiffs violated an escrow agreement regarding funds for repairs to the Property's sewer and septic tank lines, which is also not at issue here.

Defendants' summary judgment motion, finding that there was sufficient evidence of each element of passive or active concealment but that Plaintiffs were estopped from claiming they justifiably relied on extra-contractual false representations about the extent of the mold remediation.

On appeal, Defendants argue that the trial court erred when it denied summary judgment on plaintiff's fraudulent concealment claim. We agree.

> The tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages. A buyer who alleges fraudulent concealment must prove these same five elements, including, as a factor of justifiable reliance, that he or she could not have discovered the alleged defect in the exercise of due diligence. While questions of due diligence often must be resolved by the trier of fact, that is not always the case. One may fail to exercise due diligence as a matter of law.[3]

We have explained that "[f]or an action for fraud to survive a motion for summary judgment, there must be some evidence from which a jury could find each element of the tort. Actionable fraud does not result from a mere failure to perform promises

---

[3] (Citations and punctuation omitted.) *Meyer v. Waite*, 270 Ga. App. 255, 257-258 (1) (606 SE2d 16) (2004).

made. Otherwise, any breach of contract would amount to fraud."[4] Moreover, "[n]otice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led. Ignorance of a fact due to negligence shall be equivalent to knowledge in fixing the rights of parties."[5]

Plaintiffs argue that although they knew about the mold, the defendants concealed the extent of the mold contamination. But "fraud cannot be the basis of an action if it appears that the party alleging the fraud had equal and ample opportunity to prevent it and yet made it possible through the failure to exercise due diligence. Blind reliance precludes a fraud claim as a matter of law."[6]

> In the sale of land, the purchaser contracts with [his] eyes open; and, if [he] is not in some way deprived of the opportunity of inspecting the land for [himself] by the fraudulent acts or conduct of the vendor, [he] will not be heard to complain. As to such things as quality and condition

---

[4] (Citation and punctuation omitted.) *Baja Properties, LLC v. Mattera*, 345 Ga. App. 101, 105-106 (3) (812 SE2d 358) (2018).

[5] OCGA § 23-1-17.

[6] (Citations and punctuation omitted.) *Baxter v. Fairfield Financial Svcs.*, 307 Ga. App. 286, 294-295 (4) (704 SE2d 423) (2010).

which are open to inspection, [he] is willfully negligent if [he] fails to look and see for [himself].[7]

Here, Plaintiffs' knowledge of the presence of mold should have caused them to make a thorough and complete investigation of the issue before closing on the property.[8] Rather, Plaintiffs argued, and the trial court agreed, that they were authorized to rely on Defendants' representations that the results of the June 10, 2020 Gingair inspection were the same as the results of the June 1, 2020 EnviroCheck inspection and that the mold remediation was successful. But in simply relying on Defendants' representations and proceeding to close, Plaintiffs failed to exercise due diligence as a matter of law.[9] Indeed, Plaintiffs proceeded to close despite not having

---

[7] (Citation and punctuation omitted.) *Fowler v. Overby*, 223 Ga. App. 803, 806 (1) (478 SE2d 919) (1996).

[8] See *Goldman v. Hart*, 134 Ga. App. 422, 424 (4) (214 SE2d 670) (1975) (buyer's observation that the ceiling was patched "should have caused him to make a thorough and complete investigation" of the issue).

[9] See *Pollman v. Swan*, 305 Ga. App. 369, 374 (2) (699 SE2d 582) (2010) ("[F]urther inquiry before closing would have led to discovery, but the [buyers] elected not to have a separate inspection performed but instead relied upon the information provided by the sellers. In so doing, the buyers failed to exercise due diligence as a matter of law.") (citation and punctuation omitted), reversed on other grounds by *Pollman v. Swan*, 289 Ga. 767 (716 SE2d 191) (2011); see also *Smith v. Stanley*, 223 Ga. App. 334, 335-336 (477 SE2d 618) (1996) (buyer could not justifiably

received the results of the June 10 Gingair inspection, did not read the second Gingair report before closing, and did not undertake any independent investigation of the results of the remediation. Plaintiffs' deposition testimony that they would not have proceeded to close had they received the results of the June 10 Gingair inspection is particularly problematic, as they were well aware that this follow-up inspection was being conducted. And while Plaintiffs take issue with the fact that the remediation was performed by RSC and not CleanCo, they were provided documents at closing showing that RSC performed the remediation, yet they still closed. Plaintiffs alleged that much of the mold was contained within walls or otherwise hidden by paint or other materials, yet Plaintiffs' daughters were able to discover mold in plain view on the closet door in the laundry room while playing. Thus, a visual inspection before closing would have revealed the presence of this mold.[10]

---

rely upon seller's representations, despite the fact that he personally inspected the property and asked seller about flooding problems, because he was aware of potential flooding problems but failed to investigate notice that property was in a flood area).

[10] Compare *Conway v. Romarion*, 252 Ga. App. 528, 534 (3) (557 SE2d 54) (2001) ("[W]hile the dropped ceiling was accessible, in the absence of stains or odor on the tile, we believe a question of fact exists as to whether the [buyers] were required to inspect the area above the dropped ceiling."); *Salinas v. Skelton*, 249 Ga. App. 217, 222 (2) (547 SE2d 289) (2001) (there was a genuine issue of material fact regarding whether buyer could have discovered asbestos by the exercise of due diligence,

The trial court's order concludes that the Plaintiffs justifiably relied on the defendants' representation but omits any analysis of the diligence that the buyer must execute after having notice of a defect. The records shows that the Plaintiffs did not exercise the requisite level of diligence that Georgia law unequivocally requires of them. We, therefore, reverse the trial court's denial of defendants' motion for summary judgment on Plaintiffs' fraudulent concealment claim.

*Judgment reversed. Hodges and Watkins, JJ., concur.*

---

because a boiler insulated with asbestos was completely hidden behind a wall, and seller did not establish that a professional building inspector "would have broken through the wall to test the boiler insulation").